UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO.  3:25-CV-00029-CHB-CHL

GS HOLISTIC, LLC,                                                                   Plaintiff,

v.

MAA KHODIYAR INC., et al.,                                               Defendants.

## REPORT AND RECOMMENDATION

Before the Court is the Motion for Default Final Judgment Against Both Defendants of Plaintiff GS Holistic, LLC ("GS").[1]  (DN 17.)  Defendants MAA Khodiyar Inc. d/b/a Eagle Smoke Shop ("Eagle Smoke") and Vishnubhai Patel ("Patel") (collectively "Defendants") have not responded to the motion or otherwise appeared in this action, and their time to do so has expired.  *See* Fed. R. Civ. P. 12(a); LR 7.1(c).  United States District Judge Claria Horn Boom referred the motion to the undersigned "for findings of fact, conclusions of law, and recommendation."  (DN 20.)  The undersigned ordered GS to supplement its motion with legal arguments and factual proof that service upon Eagle Smoke was properly accomplished in this matter.  (DN 21.)  The deadline set for supplementation has passed, and GS did not supplement its motion as directed.  Therefore, this matter is ripe for review.

## I.    FINDINGS OF FACT

Plaintiff GS is the owner of four registered trademarks:

---

[1] GS's counsel is admonished for his failure to comply with LR 83.10(b) and the Court's ECF User Manual.  LR 83.10(b) requires uniform designation of proposed exhibits throughout all phases of a case.  The exhibits attached to counsel's motion are not clearly or uniformly labeled, making it difficult for the Court to identify and parse the documents. For example, some of the documents attached are not identified by reference to an exhibit letter or number and some are.  Further, counsel appended all exhibits to his motion as one document in violation of ECF filing procedures requiring separate exhibits to be filed as separate attachments to the main document.  The Court's ECF User Manual is available electronically here: https://www.kywd.uscourts.gov/content/ecf-user-manual.  Counsel is advised to ensure that future filings comport with all relevant Local Rules and ECF procedures.

1.    U.S. Trademark Registration No. 6,633,884 for the standard character mark "Stüdenglass" in association with goods further identified in registration in international class 011, which relates to devices used to smoke foods and drinks.

2.    U.S. Trademark Registration No. 6,174,291 for the standard character mark "Stüdenglass" in association with goods further identified in registration in internal class 034, which relates to gravity water pipes for smoking purposes.

3.    U.S. Trademark Registration No. 6,174,292 for the design plus words mark "S" and its logo in association with goods further identified in registration in international class 034, which relates to gravity water pipes for smoking purposes.

4.    U.S. Trademark Registration No. 7,028,399 for the standard character mark "Gravity Perfected" in association with goods further identified in registration in international class 010, which relates to gravity water devices for use with vaporizers for medical aromatherapy purposes.

(DN 1, at ¶¶ 9-11; DN 1-1; DN 17, at PageID # 88, 109, 118-23.)  Using these trademarks, GS manufactures, markets, and sells Stüdenglass gravity infusers, which are smoking devices "nationally and internationally" recognized for their high quality, "painstaking attention to detail," and "unsurpassed innovation."  (DN 1, at ¶¶ 7-8, 12.)  GS sells its products to authorized stores and "has authorized approximately 3,000 stores in the United States to sell its products."  (Id. at ¶ 19; DN 17, at PageID # 110; id. at 114 ("[T]he sellers of Stüdenglass products must be authorized retailers in order to sell genuine products.").)  A Stüdenglass-brand Gravity Infuser's retail price is $599.95.  (DN 1, at ¶ 20; DN 17, at PageID # 110, 114.)  GS alleged that it is often the target of counterfeiters who "tarnish the Stüdenglass brand by unlawfully selling Gravity Infusers that have identical, or nearly identical, versions of the Stüdenglass Marks affixed to products that are made with inferior or different materials, thereby leading to significant illegitimate profits by store owners."  (DN 1, at ¶ 21.)  GS alleged that based on its investigation, more than one-fifth of stores are selling counterfeit Stüdenglass products and that the "sheer amount of counterfeit Stüdenglass

2

products for sale at cheaper prices" has made it difficult for GS to enter the marketplace. (DN 17, at PageID # 114; DN 1, at ¶ 22.) It proffered that counterfeit products are sold at prices between $199 and $600. (DN 1, at ¶ 20; DN 17, at PageID # 114.) GS also alleged that the sale of counterfeit Stüdenglass products not only results in lost sales but also damage to its brand and reputation, loss of customer goodwill, and confusion in the marketplace. (DN 1, at ¶ 22; DN 17, at PageID # 111.)

Eagle Smoke is a retail smoke shop operating in Radcliff, Kentucky, owned and operated by Patel. (DN 1, at ¶¶ 5-6; DN 1-2; DN 17, at PageID # 183-203.) Eagle Smoke sells "water pipes, cigarettes, electronic cigarettes, vaporizers, tobacco, and other smoking related devices." (DN 1, at ¶ 26.) Patel "controls and directs the activities" of Eagle Smoke, including the activities at issue in this case. (*Id.* at ¶ 6; *id.* at ¶ 35 ("VISHNUBHAI PATEL authorized, directed, and/or participated in EAGLE SMOKE SHOP's offer for sale, in commerce, of the Counterfeit Goods. VISHNUBHAI PATEL's acts were a moving, active, and conscious force behind EAGLE SMOKE SHOP's infringement of the Stündenglass Trademarks.").)

On August 25, 2024, an investigator retained by GS visited Eagle Smoke while it was open to the public. (*Id.* at ¶ 33.) The investigator observed at least two infusers that appeared to display GS's trademarks being offered for sale. (*Id.*) The investigator purchased one Gravity Infuser for a cost of $529.99. (*Id.*) "Upon physical inspection by GS'[s] investigator, the product was found to be a counterfeit product." (*Id.*) The product displayed all four of GS's registered trademarks. (*Id.* at ¶ 34; DN 1-2; DN 17, at PageID # 95, 183-203.) The product did not have "an authenticity sticker [that] GS advertises is required to register the authentic products on its website, . . . was missing parts, and [was] being sold for $529,99 when the authentic product retails for $599.95," all of which GS contended supported that Defendants knew the product was not authentic. (DN

17, at PageID # 105.)  GS did not "consent[] to the Defendants' use of the Stüdenglass Trademarks, or any use of reproductions, counterfeits, copies and/or colorable imitations thereof."  (DN 1, at ¶ 36.)  Defendants also did not purchase the product from GS.  (DN 17, at PageID # 105.)  GS alleged that "[w]hile Defendants probably have not sold millions of counterfeit products, [they] have engaged in the purchase and sale of counterfeits of at least one unit, and likely traded in more as similar retailers have done nationwide as well as in Kentucky."  (*Id.* at 112.)  GS also alleged that as "merchants of tobacco shop goods," Defendants actions were "willful with the deliberate intent to trade on the goodwill of the Stüdenglass Marks, cause confusion, and deception in the marketplace, and divert potential sales."  (DN 1, at ¶¶ 46, 60, 70.)  At the very least, GS contended, given their exposure and experience, Defendants "failed to conduct any reasonable inquiry into the authenticity of the goods sold by their shop and have acted with at least willful blindness as to GS's intellectual property rights in the Stündenglass Marks."  (*Id.* at ¶ 46.)

On January 14, 2025, GS brought the instant action against Defendants, alleging claims of trademark infringement and counterfeiting in violation of 15 U.S.C. §§ 1114, 1116 and false designation of origin under 15 U.S.C. § 1125(a).  (DN 1.)  On April 16, 2025, the Court ordered GS to show cause why this matter should not be dismissed pursuant to Fed. R. Civ. P. 4(m).  (DN 6.)  In response, GS filed proof of service in the record indicating that Patel was personally served with process on March 22, 2025, by a process server who "[p]ersonally handed documents" to him at an address in Shepherdsville, Kentucky.  (DN 10.)  GS filed a document labeled "proof of service" in the record purporting to state that Eagle Smoke was served on February 20, 2025.  (DN 9.)  The process server stated under penalty of perjury:

> I served the summons on (*name of individual*) <u>MARY WHITE</u> , who is designated by law to accept service of process on behalf of (*name of organization*) <u>MAA KHODIYAR INC. d/b/a EAGLE SMOKE SHOP</u> on (*date*) <u>Thu, Feb 20 2025</u> [.]

(*Id.*)  The form completed by the process server also stated:

> Additional information regarding attempted service, etc.:
> 1) Successful Attempt: Feb 20, 2025, 7:15 pm EST at COMPANY: 528-B M. DIXIE BOULEVARD, RADCLIFF, KY 40160
> received by MARY WHITE. Age: 22; Ethnicity: Caucasian; Gender: Female; Weight: 115; Height: 5'2"; Hair: Blond; Eyes: Other;
> Relationship: Employee;
> Service upon authorized agent.

(*Id.*)  However, there is no evidence in the record regarding whether White had authorization to accept service on behalf of Eagle Smoke.  The Kentucky Secretary of State lists Patel as Eagle Smoke's President, Director, Registered Agent, and Incorporator and makes no mention of White.[2] GS's written response to the Court's Show Cause Order merely stated that service had been accomplished and included no additional supporting factual information.  (DN 8.)  The proof of service forms document that the process server's fees were $75 for service on Eagle Smoke and $525 for service on Patel.  (DNs 9, 10.)

On April 23, 2025, the Court discharged its prior show cause order and directed GS to file a report on the status of the case by May 2, 2025.  (DN 11.)  GS did so and moved for entry of default.  (DNs 12, 13.)  As Defendants had not appeared and answered or otherwise responded to GS's Complaint, on May 5, 2025, the Clerk entered a default against Defendants.  (DN 14.)

On June 11, 2025, the Court entered an order noting the default and "a need to set the case on track toward resolution."  (DN 15.)  Accordingly, it ordered GS to either file an apt motion reflective of the status of the case or a general status report no later than June 20, 2025.  (*Id.*)  GS did not do so as required, and on June 11, 2025, the Court issued an order directing GS to show cause for its failure to comply with the Court's prior order.  (DN 16.)  In response, GS filed the instant motion requesting that the Court enter a default judgment awarding it monetary and

---

[2] https://sosbes.sos.ky.gov/BusSearchNProfile/Profile.aspx?ctr=1088720

injunctive relief.  (DN 17.)  The Court set aside its prior show cause order and referred the instant motion to the undersigned as set forth above.  (DNs 19, 20.)

As of the signing of this report and recommendation, neither Eagle Smoke nor Patel has appeared and answered or otherwise responded to GS's Complaint.

## II.    CONCLUSIONS OF LAW

Fed. R. Civ. P. 55(b) allows the Court to enter a default judgment against a defendant that has failed to plead or otherwise defend in a case.  Fed. R. Civ. P. 55(b).  However, prior to entering a default judgment, a court must first assure itself that it has jurisdiction over both the subject matter and the Parties.  *See, e.g.*, *Allstate Ins. Co. v. Das*, 86 F. Supp. 3d 716, 726 (E.D. Mich. 2015); *Days Inns Worldwide, Inc. v. Patel*, 445 F.3d 899, 903 (6th Cir. 2006) (citing *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee,* 456 U.S. 694, 701 (1982)) ("The validity of a court order depends on the court having jurisdiction over the subject matter and the parties.").  The undersigned will first address these threshold issues before proceeding with the remainder of the relevant analysis regarding liability and damages.

### A.    Subject Matter Jurisdiction

The claims in the instant action allege violations of the Lanham Act, 15 U.S.C. §§ 1051-1127.  (DN 1.)  Thus, the undersigned finds that the Court has subject matter jurisdiction over the instant suit pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331, 1338(a).

### B.    Personal Jurisdiction

The undersigned finds that the Court does have personal jurisdiction over Patel—a Kentucky resident (DN 1, at ¶ 6)—because he was properly served with process under Fed. R. Civ. P. 4 when the process server personally delivered a copy of the summons and Complaint to him in Shepherdsville, Kentucky.  Fed. R. Civ. P. 4(e)(2)(A) (providing that an individual may be served

by "delivering a copy of the summons and of the complaint to the individual personally"); Fed. R. Civ. P. 4(k)(1) ("Serving a summons . . . establishes personal jurisdiction over a defendant[] who is subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located[.]").

However, the undersigned cannot find that the Court has personal jurisdiction over Eagle Smoke because GS has not demonstrated that it validly served Eagle Smoke with process. Pursuant to Fed. R. Civ. P. 4(h), a corporation, partnership, or other unincorporated association may be served (1) "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" pursuant to Fed. R. Civ. P. 4(h)(1)(B) or (2) in accordance with state law pursuant to Fed. R. Civ. P. 4(e)(1) and 4(h)(1)(A). As to the first, there is nothing in the record to support that Mary White was "an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process" within the meaning of Rule 4(h). The proof of service filed merely listed her as an employee with no other details regarding her position. The undersigned directed GS to file further factual information in support of service, but GS inexplicably did not do so . As to the second, GS has made no argument regarding whether service on White was sufficient to constitute service on Eagle Smoke under Kentucky law, and the undersigned finds no support for the same given that Kentucky law also requires service upon a corporation to be made upon "an officer or managing agent thereof, or the chief agent in the county wherein the action is brought, or any other agent authorized by appointment or by law to receive service on its behalf." Ky. R. Civ. P. 4.04(5). Given GS's lack of response to the undersigned's

order for supplementation, there is similarly no proof that White fits this definition.[3]  Without such proof or any argument by GS to the contrary, the undersigned concludes that Eagle Smoke has not been properly served with process in this action.

Fed. R. Civ. P. 4(m) states that "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time." Fed. R. Civ. P. 4(m).  This action was filed January 14, 2025; well more than ninety days have elapsed without GS accomplishing service on Eagle Smoke.  Accordingly, given the lack of response by GS to the undersigned's directive regarding service and the lack of any request by GS for the Court the extend Rule 4(m)'s time limitation, the undersigned recommends that the Court dismiss the Complaint without prejudice against Eagle Smoke.  GS is hereby put on notice that failure to file objections to the instant report and recommendation—including objections requesting an extension of the time for service based upon a showing of good cause—is likely to result in dismissal of its claims against Eagle Smoke.

As the undersigned has recommended dismissal of GS's claims against Eagle Smoke, the undersigned will proceed with the remainder of the analysis as to Patel only.

### C. Default Judgment

The undersigned finds that GS has demonstrated that it is entitled to a default judgment against only Patel.

---

[3] The undersigned also notes that while Patel would certainly fit this definition, there is no evidence presently before the Court that Patel was served with a summons directed to Eagle Smoke as opposed to directed to Patel individually. As with factual proof regarding White's role in the organization, the record is similarly devoid of legal argument to support that the latter was sufficient to constitute service on Eagle Smoke in addition to Patel.  The undersigned will make no such argument for GS.

The Court has discretion as to whether to enter a default judgment, and the Sixth Circuit has stated that in considering whether to exercise that discretion, courts should consider "1) possible prejudice to the plaintiff; 2) the merits of the claims; 3) the sufficiency of the complaint; 4) the amount of money at stake; 5) possible disputed material facts; 6) whether the default was due to excusable neglect; and 7) the preference for decisions on the merits." *Russell v. City of Farmington Hills*, 34 F. App'x 196, 198 (6th Cir. 2002) (citing *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986)).

As to the possible prejudice to GS and whether Patel's failure was due to excusable neglect, both weigh in favor of entering a default judgment. The proof of service as to Patel filed in the record establishes that he was personally served with process by a process server on March 22, 2025. Patel has apparently chosen to ignore that personal service and has not appeared or caused counsel to enter an appearance in this matter in the nearly a year since he received notice of this lawsuit. Refusing to enter a default judgment here would reward Patel for his evasive behavior and unfairly penalize GS, leaving it without any recourse for the injury Patel's conduct works to GS's registered intellectual property.

As to the merits of the claims and the sufficiency of the allegations, the well-pled allegations in GS's Complaint, taken as true in light of Patel's default, *Antoine v. Atlas Turner, Inc.*, 66 F.3d 105, 110 (6th Cir. 1995), are sufficient to state claims of trademark infringement and counterfeiting under 15 U.S.C. §§ 1114, 1116 and false designation of origin under 15 U.S.C. § 1125(a). *See also New London Tobacco Market, Inc. v. Kentucky Fuel Corporation*, 44 F.4th 393, 406 (6th Cir. 2022) (quoting in part 10A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure Civil* § 2688.1 (4th ed. 2022)) ("The effect of a default judgment is that the 'factual allegations of the complaint, except those relating to the amount of damages, will be taken as true.'

9

" (emphasis omitted)).  To establish a claim of trademark infringement under 15 U.S.C. § 1114, a plaintiff "must show that: '(1) it owns the registered trademark; (2) the defendant used the mark in commerce; and (3) the use was likely to cause confusion.' " *Libertarian Nat'l Comm., Inc. v. Saliba*, 116 F.4th 530, 534 (6th Cir. 2024) (quoting in part *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009)).  The elements of a claim for false designation of origin are similar as the Lanham Act imposes liability on

> [a]ny person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, [that] . . . is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person.

15 U.S.C. § 1125(a)(1); *see also Audi AG v. D'Amato*, 469 F.3d 534, 542 (6th Cir. 2006) (citing *Two Pesos, Inc. v. Taco Cabana*, 505 U.S. 763, 780 (1992)) ("Under the Lanham Act, 15 U.S.C. § 1051 *et seq.*, we use the same test to decide whether there has been trademark infringement, unfair competition, or false designation of origin: the likelihood of confusion between the two marks.").  "To recover on a federal trademark counterfeiting claim, a plaintiff must show that: (1) the defendant infringed a registered trademark in violation of 15 U.S.C. § 1114; and (2) the defendant intentionally used the mark knowing it was a counterfeit as the term counterfeit is defined in 15 U.S.C. § 1116." *Laukus v. Rio Brands, Inc.*, 391 F. App'x 416, 425 (6th Cir. 2010) (citing 15 U.S.C. § 1117(b)).  15 U.S.C. § 1116 defines a "counterfeit mark" as one that is "counterfeit of a mark that is registered on the principal register in the United States Patent and Trademark Office for such goods or services sold, offered for sale, or distributed and that is in use, whether or not the person against whom relief is sought knew such mark was so registered." 15 U.S.C. § 1116(d)(1)(B)(i). 15 U.S.C. § 1127 further defines "counterfeit" as "a spurious mark

which is identical with, or substantially indistinguishable from, a registered mark." 15 U.S.C. § 1127. The record supports that GS owns four registered trademarks and that at least one product sold at the control and direction of Patel in commerce was a counterfeit product utilizing GS's trademarks. By defaulting, Patel has admitted that his use of GS's trademarks was likely to cause confusion, including confusion regarding the origin of the goods offered. By defaulting, Patel has also admitted that he intentionally used GS's marks knowing they were counterfeit. Thus, the factors of the merits of the claims and sufficiency of the Complaint also weigh in favor of entry of a default judgment.

The factor of the amount of money at stake is neutral. While GS seeks significant statutory damages, the undersigned recommends below that the Court significantly reduce the amount of any award.

As to the factor regarding the possibility of a dispute as to the material facts, the undersigned finds any dispute unlikely given the record before the Court and the elements of the claims outlined above. This factor too weighs in favor of entry of a default judgment.

Finally, the factor of the Court's preference for decisions on the merits is neutral. While there exists a strong preference for resolving cases on the merits, the Court cannot do so in the absence of participation from Patel.

Thus, the undersigned finds that GS has shown that a default judgment on liability is appropriate as to Patel. The undersigned will separately consider the issue of damages and the other categories of relief sought by GS below.

### D.    Statutory Damages

A default judgment on well-pleaded allegations, "establishes only defendant's liability; plaintiff must still establish the extent of damages." *Antoine*, 66 F.3d at 110. "Even when a default

judgment is warranted based on a party's failure to defend, the allegations in the complaint with respect to the amount of the damages are not deemed true. The district court must instead conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Vesligaj v. Peterson*, 331 F. App'x 351, 355 (6th Cir. 2009) (quoting *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999)). The record contains sufficient evidence to ascertain GS's damages with reasonable certainty; therefore, an evidentiary hearing is unnecessary to resolve the present motion. Fed. R. Civ. P. 55(b)(2); *Vesligaj*, 331 F. App'x at 355.

Under the Lanham Act, a successful plaintiff "shall be entitled . . . subject to the principles of equity, to recover (1) defendant's profits, (2) any damages sustained by the plaintiff, and (3) the costs of the action." 15 U.S.C. § 1117(a). However, under 15 U.S.C. § 1117(c), in a case involving a counterfeit mark, a plaintiff may elect to recover statutory damages of between $1,000.00 and $200,000.00 "per counterfeit mark per type of goods or services sold, offered for sale, or distributed, as the court considers just." *Id.* § 1117(c)(1). That amount may be increased to $2,000,000.00 "if the court finds that the use of the counterfeit mark was willful." *Id.* § 1117(c)(2).

Here, GS elected statutory damages instead of actual damages and requested that the Court award it $150,000.00 in statutory damages, "$50,000.00 per mark."[4] (DN 17, at PageID # 104, 98-106.) As a starting point, the undersigned finds this request perplexing. While GS's motion for default judgment and supporting documentation continuously referenced GS's *three* trademarks, the Complaint in this matter actually establishes that *four* trademarks were at issue. (*Compare* DN 17, at PageID # 106 ("Here, the Defendants have infringed on three of the GS's trademarks with the Registration Numbers 6,633,884, 6,174,292, and 6,174,291, justifying $150,000.00 in statutory damages"), *with* DN 1, at ¶ 34 ("[T]he Counterfeit Good contained all

---

[4] Because GS's requested statutory damages are less than the statutory limit for non-willful violations, the undersigned need not determine whether Patel's violation was willful.

four of GS's marks on it.").)  GS offered no explanation for the discrepancy.  Nonetheless, having reviewed the record, the undersigned finds that the same does not support the appropriateness of the amount of damages requested by GS, either per mark or in total.

This is not the first case of this type brought by GS, and a search of available opinions reveals numerous cases across the country in which GS has brought similar claims.  GS argued in its motion that the $50,000 per mark it was requesting was "well within the range of awards that have been granted on a per mark basis," including in other cases brought by GS.  (DN 17, at PageID # 104, 105-06.)  GS attached as an exhibit to its motion a list of "Awards of $150,000 Dollars or more in Statutory Damages," containing examples of such awards by Courts in California, Illinois, Florida, Texas, Michigan, and Wisconsin.  (*Id.* at 106, 210-13.)  But unrecognized by GS are the other district courts—including courts within the Sixth Circuit—that have concluded less than $50,000.00 per mark was appropriate.

For example, in *GS Holistic, LLC v. In & Out 423 Inc.*, the United States District for The Eastern District of Michigan awarded a total of $15,000.00 in statutory damages.  *GS Holistic, LLC v. In & Out 423 Inc.*, No. 2:23-CV-11910-TBG-EAS, 2024 WL 3221413, at *1 (E.D. Mich. May 23, 2024).  In support of its reduction of GS's requested award, the court noted that

> GS Holistic did allege that the conduct was willful. But the allegations of willfulness are sparse, and there is no evidence that [Defendants] Alzokary and Detroit Exotic were warned about their infringing activity or persisted in them after being asked to stop. Nor is there a suggestion that they were distributing counterfeit products on a significant scale. [Defendant] Detroit Exotic appears to be a small local store. The allegations are that an investigator entered it on January 11, 2023, saw an "excess" of bongs displaying the marks at issue being sold at a price of $317.99, and purchased one to confirm his suspicions that it was fake. No photos of the offending display have been provided. And GS Holistic concedes that Defendants "probably have not sold millions of counterfeit products." ECF No. 19, PageID.79.

13

*Id.* at *4.  Relying on *In & Out*'s reasoning, the court in *GS Holistic LLC v. Mellow Tobacco & Vape, LLC*, awarded $45,000 in statutory damages, $15,000.00 per mark.  *GS Holistic LLC v. Mellow Tobacco & Vape, LLC*, No. 24-12074, 2025 WL 2085913, at *1 (E.D. Mich. July 24, 2025).  That court noted that defendants appeared to be offering two counterfeit infusers for sale at a cost of $318, well below the going market rate for an authentic infuser.  *Id.* at *4.  The court also noted that GS had not attempted to "estimate the harm caused by the[ ] particular defendants" before it and stated that GS's "conclusory estimations of the harm it suffers from counterfeit products writ large d[id] not help the Court determine the appropriate statutory damages amount in the case before it."  *Id.* at *5.  The *Mellow Vape* court also noted that its award was sufficient to "justify the costs of litigation and enforcement, thus serving the important purposes of protecting the trademark holder's property interest in its marks and deterring Lanham Act violations by the defendant and others."  *Id.*  Other cases have relied on similar factors.  *See, e.g.*, *GS Holistic, LLC v. Googy Baba LLC*, No. 1:23-CV-1263, 2024 WL 4343446, at *3 (W.D. Mich. Sept. 30, 2024) (awarding $15,000 in statutory damages and noting in support that defendants were a small local store, there was no evidence of sales on a significant scale, evidence of willfulness was "somewhat sparse and speculative," and there was no evidence that defendants persisted in the face of a request to stop); *GS Holistic, LLC v. 616 W., LLC*, No. 1:23-CV-1261, 2024 WL 4343445, at *3 (W.D. Mich. Sept. 30, 2024) (awarding $30,000 in statutory damages and noting in support that defendants were a small local store, there was no evidence of sales on a significant scale, evidence of willfulness was "somewhat sparse and speculative," there was no evidence that defendants persisted in the face of request to stop, and that the comparative sale price of the counterfeit infuser to the authentic one made it "more likely [d]efendants would have known that the product was not genuine"); *GS Holistic, LLC v. OH Wholesale, LLC,* No. 23-CV-1018-PP, 2024 WL 1886730, at

*5 (E.D. Wis. Apr. 30, 2024) (awarding $20,000 in statutory damages and noting that "[t]here is no evidence that these defendants played a role in massive counterfeiting operations"); *GS Holistic, LLC v. Haz Invs., LLC*, No. 4:23-CV-00414-O, 2024 WL 874477, at *11 (N.D. Tex. Feb. 14, 2024), *report and recommendation adopted*, No. 4:23-CV-00414-O, 2024 WL 873023, at *1 (N.D. Tex. Feb. 29, 2024) (awarding $15,000 in statutory damages and noting that amount accounted for "the number of marks infringed, the profits likely made, and the similar awards in other cases"). Some courts have even emphasized the ratio between the damages awarded and the price of the counterfeit product sold. *See GS Holistic, LLC v. Ranya & Dania LLC*, No. C23-5180JLR, 2023 WL 8650136, at *6 (W.D. Wash. Dec. 14, 2023) (awarding $5,000.00 in statutory damages and noting that the "amount equates to over eleven times the [$439.99] price of the allegedly infringing glass infuser purchased by GS Holistic's investigator"); *GS Holistic, LLC v. Sayeed*, No. 1:23-cv-05154, 2023 U.S. Dist. LEXIS 243846, at *2 (N.D. Ill. Oct. 30, 2023) (awarding $100,000 in statutory damages and noting that "anything over $100,000 would be too high: as it is, $100,000 represents around 181 units at $549.99 per unit").

The undersigned finds the reasoning of the above-cited cases more persuasive than GS's list and finds that several considerations support a lesser award than that requested by GS. First, the scope of the infringement here is limited. GS's investigator purchased one counterfeit infuser for $529.99, and only two infusers were displayed at the retail premises, the second of which neither GS nor the Court can say for sure was counterfeit regardless of whether Patel was authorized by GS to sell it. There is no evidence of widespread distribution, substantial sales volume, or any ongoing pattern of large-scale counterfeit activity. Patel sold the counterfeit infusers for $529.99, approximately 88% of the authorized retail price of $599.95. The similarity in price between the counterfeit and an authentic infuser suggests a potential lack of knowledge

that the item was counterfeit.  Further, as relied upon by other courts, from the pictures provided,

Patel operates a small, local retail establishment.  Additionally, GS has not established that Patel

caused measurable or specific harm.  As noted in *Mellow Tobacco Vape LLC*, GS "ma[de] no

attempt to estimate the harm caused by the[ ] particular defendant[ ]" and its generalized statements

about the harms of counterfeiting "do not help the Court determine the appropriate statutory

damages amount in the case before it."  *Mellow Tobacco Vape LLC*, 2025 WL 2085913, at *3.

Based on these facts, the undersigned concludes that an award of $5,000 per mark for a total of

$20,000, is just and appropriate.[5]  This award "sends a clear message to stores the size of [Patel's]

that continuing infringing activities will be unprofitable without representing an unearned

windfall."  *In & Out 423 Inc.*, 2024 WL 3221413, at *5.

### E.    Injunctive Relief

In its motion, GS also sought a permanent injunction prohibiting further infringement of

its marks.  (DN 17, at PageID # 106-07.)  "A plaintiff seeking a permanent injunction must

demonstrate that it has suffered irreparable injury[;] there is no adequate remedy at law[;] 'that,

considering the balance of hardships between the plaintiff and defendant, a remedy in equity is

warranted'[;] and that is the public's interest to issue the injunction."  *Audi*, 469 F.3d at 550

(quoting in part *eBay Inc. v. MercExchange, LLC*, 547 U.S. 388 (2006)).  The undersigned finds

that GS satisfies all four factors. First, as to irreparable injury, "[t]he law of [the Sixth] Circuit

holds that no particular finding of likelihood . . . of irreparable harm is necessary for injunctive

relief in trademark infringement cases."  *Am. Auto. Ass'n v. Dickerson*, 995 F. Supp. 2d 753, 757-

58 (E.D. Mich. 2014) (quoting *Circuit City Stores, Inc. v. CarMax, Inc.*, 165 F.3d 1047, 1056 (6th

---

[5] At a price point of $529.99, this award would represent the sale of approximately thirty-eight counterfeit infusers, which the undersigned finds to be a more appropriate ratio than GS's requested $150,000 award (the price of over 280 counterfeit infusers).  As GS itself conceded in its motion, Patel's sales volume was probably not extravagant.  (DN 17, at PageID # 112.)

Cir. 1999)).  By defaulting, Patel admitted his use of GS's trademarks caused and will cause consumer confusion regarding the origin and quality of goods.  Because the allegations establish likelihood of confusion, irreparable injury follows.  *Id*.  Second, there is no adequate remedy at law.  "[W]here there is a potential for future harm from continuing infringement, there is no adequate remedy at law."  *Id*. at 758.  The investigator documented a counterfeit infuser being sold alongside another infuser at Patel's retail premises, demonstrating potential for continued infringing activity without an injunction.  Third, the balance of hardships favors GS.  Patel faces no hardship in complying with the law by refraining from trademark infringement.  In contrast, GS faces loss of sales, brand dilution, and reputational harm if Patel's infringing activities continue.  Finally, a permanent injunction serves the public interest by "preventing consumer confusion and deception in the marketplace and protecting the trademark holder's property interest in the mark."  *Lorillard Tobacco Co. v. Amouri's Grand Foods, Inc.*, 453 F.3d 377, 383 (6th Cir. 2006).

Accordingly, the undersigned finds that GS is entitled to a permanent injunction prohibiting Patel from further infringing activities.

### F.    Costs

The Lanham Act and the Federal Rules of Civil Procedure provide that as the prevailing party, GS is entitled to costs.  15 U.S.C. § 1117(a); *see also* Fed. R. Civ. P. 54(d).  GS requested costs totaling $2,180.49, consisting of the $402.00 filing fee, $1,183.50 in process server fees, and $594.99 in investigation fees.  (DN 17, at PageID # 106.)  Filing fees and service fees are recoverable as costs.  28 U.S.C. § 1920; *Nat'l Truck Equip. Ass'n v. Nat'l Highway Traffic Safety Admin.*, 972 F.2d 669, 674 (6th Cir. 1992); *Arrambide v. Wal-Mart Stores, Inc.*, 33 F. App'x 199, 203 (6th Cir. 2002).  Thus, the undersigned recommends that GS be awarded the $402.00 filing

fee and some amount of process server fees.  GS provided no itemization or proof regarding its purported $1,183.50 in process server fees.  Instead, its counsel merely reiterated the amount it sought in his affidavit attached to GS's motion.  (DN 17, at PageID # 117.)  The executed summonses in the record list fees of $75.00 for the process server's efforts as to Eagle Smoke and $525.00 as to Patel, far less than what GS sought.  (DNs 9, 10.)  Given these discrepancies and given the fact that the undersigned concluded above that Eagle Smoke was not properly served, the undersigned recommends that the Court award only $525.00 in process server fees for the fees the record establishes were charged as to service on Patel (DN 10).  As to GS's requested recovery for "investigation" fees, GS provided no authority supporting that it was entitled to recover its "investigation" fees as an element of costs, nor did it proffer any explanation for the source of that fee or proof supporting the amount claimed outside of the conclusory assertion by counsel referenced above.  Thus, the undersigned does not recommend that any investigation fees be included in the award of costs.

Based on the foregoing, the undersigned recommends an award of $927.00 in costs.

### G.    Destruction of the Infringing Products

GS also requested that the Court enter an order for destruction of the infringing products pursuant to 15 U.S.C. § 1118.  (DN 17, at PageID # 107.)  15 U.S.C. § 1118 provides:

> In any action arising under this chapter, in which a violation of any right of the registrant of a mark registered in the Patent and Trademark Office, a violation under section 1125(a) of this title, or a willful violation under section 1125(c) of this title, shall have been established, the court may order that all labels, signs, prints, packages, wrappers, receptacles, and advertisements in the possession of the defendant, bearing the registered mark or, in the case of a violation of section 1125(a) of this title or a willful violation under section 1125(c) of this title, the word, term, name, symbol, device, combination thereof, designation, description, or representation that is the subject of the violation, or any reproduction, counterfeit, copy, or colorable imitation thereof, and all plates, molds, matrices, and other means of making the same, shall be delivered up and destroyed. The party seeking an order under this section for destruction of articles seized under section

> 1116(d) of this title shall give ten days' notice to the United States attorney for the judicial district in which such order is sought (unless good cause is shown for lesser notice) and such United States attorney may, if such destruction may affect evidence of an offense against the United States, seek a hearing on such destruction or participate in any hearing otherwise to be held with respect to such destruction.

The record is devoid of any evidence that GS gave the required notice to the U.S. Attorney. Thus, the undersigned does not recommend the Court enter such any destruction order.

## III. RECOMMENDATION

For the reasons set forth above, the undersigned **RECOMMENDS** that GS Holistic LLC's Motion for Default Final Judgment Against Both Defendants (DN 17) be **GRANTED IN PART** and **DENIED IN PART**:

(1)    The undersigned **RECOMMENDS** that the motion (DN 17) be **DENIED** as to Defendant MAA Khodiyar Inc. d/b/a Eagle Smoke Shop and that this action be dismissed without prejudice as to that Defendant pursuant to Fed. R. Civ. P. 4(m).[6]

(2)    The undersigned **RECOMMENDS** that the motion (DN 17) be **GRANTED IN PART AND DENIED IN PART** as to Defendant Vishnubhai Patel as follows:

(a)    The undersigned **RECOMMENDS** that a default judgment be entered against Defendant Vishnubhai Patel in the total amount of $20,927.00, consisting of $20,000 in statutory damages and $927.00 in costs.

(b)    The undersigned **RECOMMENDS** that a permanent injunction be entered via separate order as to Defendant Vishnubhai Patel restraining and enjoining him from infringing upon G.S. registered trademarks Nos. 6,633,884, 6,174,292, 6,174,291, and 7,028,399.

---

[6] In light of this recommendation and as set forth above, GS is hereby put on notice that failure to file objections to the instant report and recommendation—including objections requesting an extension of the time for service based upon a showing of good cause—is likely to result in dismissal of its claims against Eagle Smoke.

(c)     The undersigned **RECOMMENDS** that GS's request for an order pursuant

to 15 U.S.C. § 1118 be denied.

Colin H Lindsay, Magistrate Judge

United States District Court

cc:  Counsel of record

January 21, 2026

## Notice

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations.  A copy shall forthwith be electronically transmitted or mailed to all parties.  28 U.S.C. § 636(b)(1)(C).  Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal.  *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).